**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hunter Awsum, | No. CV-21-01770-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Hunter Awsum's Application for Disability Insurance Benefits ("DIB") by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 20), Defendant Social Security Administration Commissioner's Response Brief (Doc. 21), and Plaintiff's Reply Brief (Doc. 22). The Court has reviewed the briefs, Administrative Record (Doc. 18, "R."), and the Administrative Law Judge's ("ALJ") decision (R. at 17-30) and affirms the ALJ's decision for the reasons addressed herein.

## I.      BACKGROUND

Plaintiff filed an application for DIB on September 13, 2019, for a period of disability beginning on March 18, 2018. (R. at 17). Plaintiff's claims were denied initially on December 4, 2019, and upon reconsideration on March 20, 2020. (R. at 17). Plaintiff testified before an ALJ in a telephonic hearing regarding his claims on August 5, 2020. (R. at 17). The ALJ denied his claims on February 19, 2021. (R. at 17-30). On August 20,

2021, the Appeals Council denied his request for review of the ALJ's decision. (R. at 1-6). On October 20, 2021, Plaintiff filed this action seeking judicial review. (Doc. 1).

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon consideration of the medical records and opinions, the ALJ evaluated Plaintiff's alleged disability based on the severe impairments of degenerative disc disease of the lumbar spine with prior surgery, recurrent hemorrhoids, and diabetes mellitus. (R. at 20).

Ultimately, the ALJ evaluated the medical evidence and opinions and concluded that Plaintiff was not disabled. (R. at 30). The ALJ found that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 22). Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b)" with certain function limitations and concluded that Plaintiff can perform "other jobs that exist in significant numbers in the national economy." (R. at 23, 28).

## II.   LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id*. To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id*. As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's

conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five–step process. 20 C.F.R. § 416.920(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 416.920(c). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 416.920(d). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 416.920(e). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 416.920(g). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III.   ANALYSIS

As a preliminary matter, the Court takes notice that Plaintiff is *pro se* and has been unrepresented for the duration of this matter from the time of his original filing with SSA through his filing with this Court and all related issues presently before the Court. There is no constitutional right to representation at Social Security hearings. *Judd v. Astrue*, No. CV-07-01740-PHX, 2009 WL 481956, at *9 (D. Ariz. Feb. 25, 2009) (citation omitted). However, the Ninth Circuit has held that an ALJ must explain to a *pro se* Plaintiff the "avenues which [the *pro se* Plaintiff] could pursue in obtaining counsel." *Cruz v.*

*Schweiker*, 645 F.2d 812, 814 (9th Cir.1981). The Court finds that the ALJ met her burden in explaining the options available to Plaintiff to obtain counsel. It is clear from the hearing that the ALJ discussed Plaintiff's rights, outlined the various fee schedules for attorneys, and the possibilities for free services available from specialized organizations. (R. at 48-49). The ALJ also discussed that she would answer any of Plaintiff's questions and explain processes throughout the hearing and was accommodating to Plaintiff by ensuring she reviewed and ordered missing medical records on his behalf. (R. at 49, 52). The ALJ asked Plaintiff twice before the start of the hearing if he would like to proceed without representation and he replied in the affirmative each time. (R. at 49). Plaintiff stated that he did contact a few attorneys about his issues, but they declined to take his case and he was ready to move forward without representation. (R. at 49). Additionally, this Court also provided Plaintiff with possible legal resources to assist him with representation of his case. (Doc. 4 at 1-7). In Plaintiff's opening brief, he acknowledged receipt of those materials and again proffered that he contacted attorneys for assistance, but they were unable to offer support with his case. (Doc. 20 at 1).

**A.  Plaintiff failed to argue a specific issue of error in the ALJ's decision.**

Plaintiff was advised with the issuance of this Court's scheduling order that parties must strictly comply with Local Rule of Civil Procedure 16.1 with regards to their briefing requirements. (Doc. 8 at 1-2). Included within that order was a warning to the parties that general allegations were insufficient to raise an issue for review. *See Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) (internal citation omitted) ("We review only issues which are argued specifically and distinctly in a party's opening brief. We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim . . ."). (Doc. 8 at 3). The Court finds that Plaintiff's opening brief failed to conform to the parameters this Court set out in its Order and Plaintiff failed to identify any specific errors with the ALJ's decision. Plaintiff merely reiterated the testimony from his hearing before the ALJ and simply provided a summary of his injuries on why he believed he was disabled. (Doc. 20 at 1-2).

The Plaintiff carries the weight of proving that he is disabled based upon the medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). If Plaintiff chooses to challenge the ALJ's decision that he is not disabled, "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009). Plaintiff has failed to present with specificity any arguments to challenge how the ALJ erred in her decision nor pointed to any evidence in the record to rebut the ALJ's conclusions of a non-disability finding. *See Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (refusing to address a finding because a claimant failed to argue issues in his brief with specificity). Additionally, Plaintiff cannot raise substantive arguments for the first time in a reply brief. *Smith v. Marsh*, 194 F.3d1045, 1052 (9th Cir. 1999). Yet it appears that Plaintiff raised two issues in his reply brief, perhaps without realization, that the Court will address.

**B.  The ALJ did not err in rejecting Plaintiff's symptom and pain testimony.**

In Plaintiff's reply brief, it would appear he attempted to argue the ALJ committed error in rejecting his symptom and pain testimony. Although not framed in legal terminology, Plaintiff seemed to take issue with the ALJ attributing certain activities of daily living to him that he believed were taken out of context such as statements about his ability to run up bleachers at a track and his gym membership. (Doc. 22 at 2). The Court is not persuaded.

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). Second, absent evidence of malingering, an ALJ may only discount a claimant's allegations for reasons that are "specific, clear and convincing" and supported by substantial evidence. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). "The clear and convincing standard

is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015.

"[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings regarding the Plaintiff's credibility are insufficient. *Id*. "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, "an ALJ [is not] required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112. For instance, the ALJ may consider "'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'" *Id*. (quoting *Lingenfelter*, 504 F.3d at 1040). Additionally, "[a]lthough [a] lack of medical evidence cannot form the sole basis for discounting pain [or symptom] testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ's decision accounted for Plaintiff's physical impairments encompassing degenerative disc disease of the lumbar spine with prior surgery, recurrent hemorrhoids, and diabetes mellitus. (R. at 20). Plaintiff reported that in March 2018, he underwent spine surgery, and the doctor told him it did not go well. (R. at 68). Plaintiff testified that the doctor left him disabled and in pain, and he would have to wait a year to undergo a second surgery to make repairs because of insurance purposes. (R. at 68). Plaintiff stated that after his first surgery, he could only walk with the use of a cane, walker, or mobility scooter, and he still requires use of those tools to ambulate. (R. at 68, 76). Plaintiff underwent his second surgery in 2019 and claimed that when he asked the surgeon how it went, the doctor again replied that it did not go well, that although he was able to place screws into his back this time, they were not placed correctly. (R. at 69-70). Plaintiff stated that the pain he

experiences is "horrendous." (R. at 64). He testified that there's pain all the way up his spine into his head that gives him headaches, nausea, and cause his hands to shake. (R. at 64). Plaintiff further stated that he can only stand for a minute or two due to pain and cannot sleep at night because when he turns or moves, he screams in pain. (R. at 56, 58, 64). Plaintiff testified that when he sits, he experiences swelling and an urgency to use the bathroom without much warning. (R. at 65-66). Plaintiff stated that he can sit for a few minutes at a time before needing to stand up to stretch, and he would prefer to lay down most of the day because that is when he experiences the most relief from pain. (R. at 75-76).

The ALJ considered the level of Plaintiff's medical issues and found that, "the [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record…" (R. at 24). The ALJ then cited to specific examples in the record to support her findings. The ALJ appropriately relied on medical evidence that did not corroborate the Plaintiff's allegations as only one reason to discount his testimony. Although this could not be the ALJ's sole consideration, it is a permissible one. *Burch*, 400 F.3d at 680.

Plaintiff's argument only centers around his back pain and the Court will consider that medical evidence in its analysis of the ALJ's decision. The ALJ provided an extensive medical summary in her findings that address Plaintiff's issues and the treatments he underwent for pain related to those issues. An MRI showed bilateral pars defects and spondylosis at L5 of Plaintiff's spine and in March 2018, he underwent surgery for an anterior lumbar interbody fusion at L5-S1. (R. at 24, 446, 453). After the surgery, Plaintiff complained of continual back pain that radiated down his leg, the need for a cane to ambulate, and received spinal injections with reported little relief of the pain. (R. at 24, 453, 467-70). A post-operative x-ray in May 2018 revealed no acute abnormality and satisfactory post fusion at L5-S1. (R. at 24, 638-39). Plaintiff's examination showed

tenderness of the lumbar spine with normal range of motion. (R. at 24, 467-70). A medical examination in June 2018 showed he had normal lumbar lordosis with slow gait, full upper extremity strength, and guarded but improving lower extremity strength and was advised to continue with physical therapy. (R. at 24, 657). A July 2018 MRI of the lumbar spine revealed mild to moderate changes of L5-S1 neural foraminal narrowing, but his hardware was noted to be in an acceptable position and the MRI showed no concerning findings. (R. at 24, 511-14, 653). Examinations from August 2018 reported Plaintiff complaining of atypical pain that were out of proportion to exams, labs, and diagnostic image findings. (R. at 24, 649-50, 653). Records from September 2018 noted Plaintiff complained of pain levels at 6/10; however, examinations indicate normal coordination, intact reflexes, normal sensation, full motor strength, non-antalgic gait and negative straight leg raises, limited range of lumbar spine with no tenderness and no muscle spasms. (R. at 24, 632, 636-40). Plaintiff was prescribed pain medication and home physical therapy exercises and although Plaintiff later reported improvement, he asserted the pain continued. (R. at 25, 645). While Plaintiff declared he continued to use a back brace, further examinations showed normal findings and Plaintiff stated he went to the gym daily, but he was advised to discontinue doing exercises that cause pain and to only use the brace for long distance ambulation. (R. at 25, 646).

An examination in January 2019 reported Plaintiff had continued pain, but his physical examination indicated full motor strength, no tenderness of lumbar spine and normal gait. (R. at 25, 1732-33). In March 2019, records note Plaintiff was bike riding even though he alleged persistent pain. (R. at 1729). However, a CT of his spine revealed a loosening L5 pedicale screw and hardware removal was recommended so the Plaintiff underwent a second surgery in April 2019. (R. at 25, 900, 930, 951, 1713-20, 1727-28). Plaintiff attended physical therapy post-surgery and made improvements with soft tissue mobility and gait. (R. at 25, 975). However, Plaintiff requested to discontinue physical therapy in July 2019, against his medical recommendations, and stated that he was lifting weights at the gym and running up bleachers, although Plaintiff had intermittent reports of

pain. (R. at 25, 975, 977). An October 2019 CT scan revealed stable hardware with no significant stenosis, and his physical examination showed intact sensation, full motor strength, full range of motion with no spasms, normal gait, negative straight leg raises, and could rise easily from a seated position and stand normally. (R. at 25, 1696, 1701-02).

In February 2020, Plaintiff sought a consultation with a new provider complaining of pain from 4-8/10 with spasms and stiffness. (R. at 25, 2057). A CT scan showed good fusion with no stenosis and the provider did not recommend further surgical intervention. (R. at 25, 2057). A March 2020 examination noted abnormal tandem gait, intact reflexes and sensation, no pain with lumbar flexion or extension and minimal tenderness of the lumbar spine. (R. at 25, 1784-1810). The ALJ noted that Plaintiff was continued on a conservative treatment with joint injections and home exercise with stretching. (R. at 25, 1784-1810). A CT scan in June 2020 of the lumbar spine was unchanged compared to his October 2019 findings. (R. at 25, 1774).

Based upon the number of examples cited from the medical evidence within the record, the ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effect of his symptoms inconsistent with the medical evidence. (R. at 26). The Court agrees with the ALJ's findings. The ALJ illustrated that Plaintiff's treatments have been relatively routine. (R. at 26.) This was also a proper consideration by the ALJ. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (indicating that if a claimant has only received conservative treatment, this is a proper reason for the ALJ to discount his symptom testimony). Medical notes indicate that following Plaintiff's surgeries, he healed with normal lumbar lordosis, normal sensation and reflexes, mostly normal gait, and full motor strength. (R. at 26, 632-43, 645-46, 1696-1702). A CT scan showed stable results post hardware removal surgery and unchanged findings between October 2019 and June 2020. (R. at 26, 1774).

However, the ALJ identified and considered all of Plaintiff's ailments and allegations of pain in determining his RFC. Given those allegations, the ALJ specified a series of postural and environmental restrictions within a job setting applicable to Plaintiff

when the ALJ made her findings of Plaintiff's RFC. While the ALJ ultimately found that Plaintiff could return to one of his past relevant work positions, the ALJ went further and made alternative findings for step five of the evaluation process. (R. at 28). The ALJ found Plaintiff could perform light work with noted limitations and there were jobs available that would comply with Plaintiff's needed physical accommodations. The ALJ's conclusion that the objective medical evidence does not fully support Plaintiff's allegations is reasonable. *See Valentine v. Astrue*, 574 F.3d 685, 690 (9th Cir. 2009) (reiterating that the substantial evidence standard of review is highly deferential). Furthermore, the ALJ tied her discussion of the medical evidence regarding Plaintiff's physical issues to the limitations Plaintiff claimed from those impairments. The ALJ is not required to mechanically specify each allegation that every piece of medical evidence undermined. Grouping the medical evidence with the allegations they undermined was sufficient. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (restating that ALJs may explain their decisions with unideal clarity so long as their reasoning is reasonably discernible).

Considering Plaintiff's daily living activities, the ALJ noted that while Plaintiff claimed he needed a cane, mobility scooter, or back brace to ambulate, records reveal that he was warned about overuse of the brace and advised to only use it for activities and ambulating long distances. (R. at 646). Plaintiff testified that he could provide his own personal care and grooming, but it takes him longer, anywhere from one to two hours to get ready for the day. (R. at 76). Plaintiff further testified that he could do some light household chores like washing dishes, although he may require a break, and he can take out a trash bag or sweep the floor. (R. at 77). Plaintiff stated that he can drive, but he puts pillows behind his back and may need to take a break to stretch. (R. at 75). Plaintiff also testified that he watches his son, but he cannot pick him up. (R. at 77-78). The medical records further noted that on June 14, 2019, Plaintiff indicated that he wanted to run a half-marathon in August although he was just cleared for light jogging. (R. at 978, 980). On June 28, 2019, Plaintiff said he was doing bleacher runs and jogging at the community

college track and asked to be discharged from physical therapy because he was feeling better but was advised against this and the bleacher runs. (R. at 977). On July 2, 2019, Plaintiff also stated that he goes to the gym and lifts weights and was again advised to wait for clearance from his surgeon to maintain tissue integrity and allow for proper healing. (R. at 975). He was discharged from physical therapy at his request due to symptom improvement. (R. at 975). The ALJ also noted that throughout the period of consideration, Plaintiff successfully maintained a part-time job with accommodations working as a police aide for a community college and it appears his abilities are greater than alleged. (R. at 26, 54-55). "Even where those [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," *Molina*, 674 F.3d at 1113, or where they suggest that "later claims about the severity of [the] limitations were exaggerated," *Valentine*, 574 F.3d at 694. Thus, the ALJ's finding that Plaintiff was not as limited as he alleged was reasonable.

Given the scope of the record, the ALJ properly relied upon objective medical evidence to find the Plaintiff's allegations were inconsistent with the record, the relatively routine course of treatments for Plaintiff's impairments, and Plaintiff's daily activities to discount his symptom testimony. There is sufficient evidence present to enable the Court to reasonably discern the ALJ's path to conclude that her decision is supported by substantial evidence. As stated previously, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954. The ALJ provided specific, clear and convincing reasons to dismiss Plaintiff's symptom testimony and those reasons were supported by substantial evidence.

### C. The ALJ properly considered the state agency medical opinion evidence.

In Plaintiff's reply brief, he argues that the law prohibits consideration of medical doctors' opinions that have not completed an in-person medical examination of him. (Doc. 22 at 1). Case law does not support Plaintiff's argument and does in fact allow an ALJ to

consider the findings of medical consultants who have performed a review of the medical evidence in the record without a formal examination.

Plaintiff applied for disability benefits after March 27, 2017, and is subject to the new set of regulations for evaluating evidence from medical providers. *See* 20 C.F.R. § 416.920c. The new regulations eliminate the previous hierarchy of medical opinions, and the ALJ is not allowed to defer to or give specific weight to any medical opinions. The new regulations state:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. § 416.920c.[1]

The regulations define "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions." 20 C.F.R. § 416.913(a)(2). All "other medical evidence" that an ALJ considers as part of the Administrative Record is defined as "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 416.913(a)(3).

The new regulations also expand the definition of acceptable medical sources. "Medical source means an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law." 20 C.F.R. §

---

[1] Other factors that may be considered by the ALJ in addition to supportability and consistency include the provider's relationship with the claimant, the length of the treatment relationship, frequency of examinations, purpose and extent of the treatment relationship, and the specialization of the provider. 20 C.F.R. § 416.920c.

404.1502 (d). The regulations require an ALJ to articulate how persuasive they find all the medical opinions and prior administrative medical findings and set forth specific "articulation requirements" for the ALJ's evaluation of the medical opinion evidence. 20 C.F.R. §§ 404.1520c(b), 416.920(b).

Recently, the Ninth Circuit confirmed that the "recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Thus, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies. Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* With that said, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id*. at 792.

In the present case, the ALJ found the findings of state agency medical consultants Dr. Combs, M.D., Dr. Weinberg, M.D., and Dr. Roberts, M.D., the doctors that reviewed Plaintiff's case without a medical examination, partially persuasive. (R. at 27). All three consultants found that Plaintiff could perform work within the medium range. (R. at 27, 97-99, 118-21, 137-39). The ALJ noted that their findings were consistent with the medical record evidence available at the time of their reviews, and the product of a detailed and thorough examination of the medical evidence. (R. at 27). However, the ALJ recognized that additional treatment notes and other evidence, including Plaintiff's testimony, was submitted after the consultants completed their review of the record. (R. at 27). In consideration of the late submission, the ALJ further reduced Plaintiff's RFC to light work and included postural limitations to accommodate his condition. (R. at 27). The ALJ even

1    went so far as to reduce Plaintiff's RFC even further in his favor by finding that he could

2    only stand and walk for thirty minutes at a time and could sit for thirty minutes at a time.

3    (R. at 23).

4         It is clear to the Court that the ALJ cited to specific examples in the medical record

5    that support her RFC finding. The ALJ fully articulated how persuasive she found all of

6    the medical opinions. It is apparent from the record that the ALJ provided substantial

7    evidence to sufficiently support her decision. Plaintiff presents no evidence to dispute any

8    of the ALJ's decision and Plaintiff's argument only seeks to offer an alternative outcome

9    that he should be found disabled, which the Court does not support.[2] *See Burch*, 400 F.3d

10   at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the

11   ALJ's conclusion that must be upheld.").

12   . . .

---

[2] Plaintiff submitted supplemental medical records to the Court (Doc. 24) which are dated from May 2022. However, the Court cannot consider the additional documentation as it was not presented to the SSA, and ultimately the ALJ, for consideration. It is documented after the date of the ALJ's decision, and it therefore falls outside of the period of disability currently pending before the Court.

## IV. CONCLUSION

As the Court previously discussed above, the Court finds that Plaintiff has failed to argue with any specificity a claim to challenge how the ALJ erred in her decision nor pointed to any evidence in the record that contradicts the ALJ's conclusions of a non-disability finding.

In the alternative, the Court finds that substantial evidence exists to support the Commissioner's nondisability determination. Plaintiff's symptom testimony was appropriately discounted by specific, clear, and convincing reasons supported by substantial evidence, and the medical opinion evidence was properly considered. The Court need not reach the merits of any possibility to remand for an award of benefits since the Court finds a remand is unwarranted.

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment accordingly and dismiss this action.

Dated this 17th day of March, 2023.

Michael T. Liburdi
United States District Judge